Wanamaker, J.
The single substantial question in this case is this: Was the jeopardy of Billotto under the indictment for the unlawful killing of Dominic Campolo available to him by plea in bar, or otherwise, upon his trial upon the second indictment for the unlawful killing of Joe Campolo?
The rights of the defendant are based upon the provision of the Ohio Constitution, Section 10, Article I (Bill of Bights), which reads:
“No person shall be twice put in jeopardy for the same offense.”
The people in their paramount law, the constitution, having made provision as to former jeopardy, neither the legislature, nor a court, nor any other agency of government, has any right to add to or *16 subtract from tbe plain and usual meaning of the constitutional provision.
Bouvier’s Dictionary defines the word “offence,” as applied to criminal law, as follows: “The doing that which a penal law forbids to be done,” etc.
The penal law of this case must be the statute law for we have no other offenses in Ohio than statutory offenses. On trial of the case the court charged the jury on the plea in bar and the issues thereunder, as follows:
“(1) If you find that the defense of the defendant in the case for killing Dominic Campolo was that the defendant, in one quarrel or difficulty, fired a number of shots at one. time in rapid succession, and that they were all fired by the defendant with the intent and purpose of defending himself against the attack of Joe Campolo, and that Dominic Campolo was by one or more of said shots killed by accident or bad marksmanship, and that such firing of said shots and the killing of said Dominic Campolo and Joe Campolo were one act, when the defendant was acquitted of murder in the second degree at the former trial for killing Dominic Campolo, he was thereby acquitted of the charge of killing Joe Campolo as charged in the indictment in this case.
“ (2) The charge of the Court and the shorthand notes of the Official Court Stenographer of the testimony in the case of The State of Ohio v. Francesco Billotto are parts of the record in said case, and if said charge of the court and said notes of the Official Stenographer, or either of them, show that in said case for the killing of Dominic. Campolo, the defendant claimed, as a defense, that the shots which he fired (no matter what the number of shots) instan *17 taneously succeeded or followed each other, and were all fired in the same quarrel at Joe Campolo, with the intent and purpose of defending himself against the attacks of Joe Campolo, but that one or more of said shots accidentally killed Dominic Cam-polo, and on the trial of said former case there was a general verdict of ‘Not Guilty,’ and judgment thereon, then the record in said case for the killing of Dominic Campolo shows the acquittal of the defendant, Francesco Billotto, for the offense charged in the indictment in this case for killing Joe Cam-polo, and your verdict should be for the defendant.”
In all, there were some seven or more charges of the same general nature, which, if correct, warranted the jury in acquitting the defendant Billotto for the killing of Joe Campolo.
The legal issue here is a very simple one, and may be put in the following categorical form: “Does the indictment charging Billotto with the unlawful killing of Dominic Campolo charge ‘the same offense’ as the indictment against Billotto for the unlawful killing of Joe Campolo?”
Bouvier defines “homicide” as “The killing of any human creature.” 4 Blackstone’s Commentaries, 177.
Here are two “human creatures” killed by different bullets, necessarily fired at different times, though but an instant may have intervened, and the claim is therefore made that because the killings grew out of the same quarrel or controversy they are the same offense.
That would be a dangerous doctrine indeed. A man might use a gatling gun, and kill half a hundred by one discharge, and still, under such a doctrine, he *18 would commit but one offense. Each killing of each human creature constitutes a homicide, and furnishes the basis of a separate indictment in each case.
This question of jeopardy was recently considered by this court in the case of State v. Rose, 89 Ohio St., 383, 386, where this same provision of the constitution was under consideration:
“The words ‘same offense’ mean same offense, not the same transaction, not the same acts, not the same circumstances or same situation. * * *
“It is not enough that some single element of the offense charged may have a single element of some other offense as to which the defendant had theretofore been in jeopardy, but the constitutional provision requires that it shall be the ‘same offense.’ The usual test accepted by the text-writers on criminal law and procedure is this: If the defendant upon the first charge could have been convicted of the offense in the second, then he has been in jeopardy.”
Applying that test would anyone contend, that, if, on the trial under the indictment charging Billotto with killing Dominic Campolo, it had turned out from the evidence that there was a reasonable doubt whether or not the defendant Billotto was guilty of killing Dominic Campolo but was clearly guilty of killing Joe Campolo, the jury might have returned a verdict of guilty as to the killing of Joe Campolo? Such a variance would clearly be fatal. You cannot try a man for the unlawful killing of any human creature other than the one he is charged with killing in the indictment upon which he is then being tried. "We do not prove the substance of one crime by proving the substance of another.
*19 If Billotto could not be found guilty of killing Joe Campolo upon tbe indictment as to tbe killing of Dominic Campolo, it must follow as tbe nigbt tbe day that jeopardy under tbe indictment for tbe killing of Dominic Campolo in no wise affected tbe jeopardy under the indictment for tbe killing of Joe Campolo. The exceptions of tbe prosecuting attorney of Columbiana county to tbe ruling of tbe court as to tbe unlawful killing of Joe Campolo are sustained.

Exceptions sustained.

Marshall, C. J., Johnson, Hough, Jones and Matthias, JJ., concur.